COMMONWEALTH OF VIRGINIA
STATE CORPORATION COMMISSION

VIRGINIA, in the

CIRCUIT COURT
 of the
CITY OF CHARLOTTESVILLE
315 E HIGH ST
CHARLOTTESVILLE, VA 22902

RICHARD SINCERE

vs                    Case/File/Matter Number: CL2011 126

BAC HOME LOANS SERVICING, LP, ET AL

CERTIFICATE OF COMPLIANCE

I hereby certify that a copy of the process, notice, order or demand in the above-styled matter
served upon the Clerk of the State Corporation Commission pursuant to § 12.1-19.1 of the Code
of Virginia as statutory agent was mailed on April 27, 2011 by First Class mail to the following:

BAC HOME LOANS SERVICING
1800 TAPO CANYON RD
SIMI VALLEY, CA 93063

Dated: April 27, 2011          *Joel H. Peck*
                               Joel H. Peck
                               Clerk of the Commission

Enclosures

SERVOP
CIS0317
11-04-26-1610

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF CHARLOTTESVILLE

Richard Sincere,                                     *
102 Laurel Circle
Charlottesville, VA 22903                            *

*Plaintiff,*                                         *

           v.                                        *        Case:

                                                     *

BAC HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS                               *
SERVICING LP
                                                     *
       *SERVE:*
       Virginia State Corporation Commission         *

                                                     *

and                                                  *

                                                     *

RECONTRUST COMPANY, N.A.,                            *

       *SERVE*:                                      *
       Virginia State Corporation Commission
                                                     *

and                                                  *

ALG TRUSTEE, L.L.C.,                                 *

       *SERVE*:                                      *
       CT Corporation System
       4701 Cox Rd Ste 301                           *
       Glen Allen, VA 23060                          *

and                                                  *

MORTGAGE ELECTRONIC                                  *
REGISTRATION SYSTEMS, INC.,
a Delaware corporation, DE File No. 2543543,         *



FILED

2011 APR 11  A 11: 40

- 1 -

**COVER SHEET FOR FILING** /IL ACTIONS
COMMONWEALTH OF VIRGINIA

Case No. ......
(CLERK'S OFFICE USE ONLY)*

...... Circuit Court

_Richard Sincere_
PLAINTIFF(S)

v./In re: _BAC Home Loans Servicing LP_
_fka Countrywide Home Loans Servicin_
DEFENDANT(S)  _LP, et al_

I, the undersigned [ ] plaintiff [ ] attorney for plaintiff hereby notify the Clerk of Court that I am filing the following civil action.
(Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

[ ] Accounting
[ ] Administrative Appeal
[ ] Adoption
[ ] Adoption - Foreign
[ ] Adult Protection
[ ] Aid and Guidance
[ ] Annexation
[ ] Annulment
[ ] Appeal Decision of ABC Board
[ ] Appeal Decision of Board of Zoning
[ ] Appeal Decision of Comp Board
[ ] Appeal Decision of Employment Commission
[ ] Appeal Decision of Local Government
[ ] Appeal Decision of Marine Resources Commission
[ ] Appeal Decision of Voter Registration
[ ] Appointment of Church Trustee, Substitute Fiduciaries
[ ] Approval of Right to be Eligible to Vote
[ ] Asbestos Litigation
[ ] Attachment
[ ] Bond Forfeiture Appeal
[ ] Child Abuse and Neglect - Unfounded Complaint
[ ] Civil Contempt
[ ] Claim Impleading Third Party Defendant
[ ] Complaint - (Miscellaneous)
[ ] Compromise Settlement
[ ] Condemnation
[ ] Confessed Judgment
[ ] Conservator of Peace

[ ] Construe Will
[ ] Contract Action
[ ] Contract Specific Performance
[ ] Correct/Erroneous State/Local Taxes
[ ] Counterclaim
[ ] Cross Claim
[ ] Custody/Visitation/Support /Equitable/Distribution
[X] Declaratory Judgment
[ ] Declare Death
[ ] Delinquent Taxes
[ ] Detinue
[ ] Divorce
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheat
[ ] Establish Boundaries
[ ] Expunge
[ ] Forfeiture of U.S. Currency
[ ] Freedom of Information
[ ] Garnishment
[ ] General Tort Liability (other than motor vehicle)
[ ] Grievance Procedures
[ ] Guardian/Conservator Appointment
[ ] Impress/Declare a Trust
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Intentional Tort
[ ] Judgment Lien-Bill to Enforce
[ ] Judicial Review

[ ] Landlord/Tenant
[ ] Mechanics Lien
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Name Change
[ ] Order to Sever
[ ] Partition
[ ] Petition
[ ] Product Liability
[X] Quiet Title
[ ] Referendum Elections
[ ] Reformation of Trust
[ ] Reinstatement of Driving Privileges
[ ] Reinstatement (General)
[ ] Removal
[ ] Separate Maintenance
[ ] Standby Guardian/ Conservator
[ ] Termination of Mineral Rights
[ ] Unlawful Detainer
[ ] Vehicle Confiscation
[ ] Will Contested
[ ] Writ of Certiorari
[ ] Writ of Habeas Corpus
[ ] Writ of Mandamus
[ ] Writ of Prohibition
[ ] Writ of Quo Warranto
[ ] Wrongful Death
[ ] Other

..............................
..............................

[ ] Damages in the amount of $ _250,000_ ...... are claimed.

_4-11-11_
DATE

SIGNATURE OF [ ] PLAINTIFF [ ] DEFENDANT [X] ATTORNEY FOR [X] PLAINTIFF    _VSB #80179_
[ ] DEFENDANT

_Jeffrey Brundage_
PRINT NAME

_11320 Random Hills Rd  Fairfax VA 22030_
ADDRESS /TELEPHONE NUMBER OF SIGNATOR

FORM CC-1416 (MASTER) PAGE ONE 11/06

See reverse side for Civil Action Type Codes
-for Clerk's Office Use Only

dated 10/16/1995 (MERS1)                           *
1818 Library Street
Reston, VA 20190                                    *

     *SERVE:*                                       *
     Registered Agent for MERS1 and
     MERS2                                         *
     Sharon Horstkamp, Esq.
     1818 Library Street, Suite 300                *
     Reston, VA 20190
                                                   *

and                                                 *

MORTGAGE ELECTRONIC                                 *
REGISTRATION SYSTEMS, INC.,
a Delaware corporation, DE File No. 2990193,        *
dated 01/01/1999 (MERS2)
1818 Library Street                                 *
Reston, VA 20190
                                                   *

     *SERVE:*
     Registered Agent for MERS1 and                *
     MERS2
     Sharon Horstkamp, Esq.                        *
     1818 Library Street, Suite 300
     Reston, VA 20190                              *

*Defendants.*                                       *
*   *   *   *   *   *   *   *   *   *   *   *   *

## COMPLAINT

       COMES NOW, Plaintiff, RICHARD SINCERE, by and through counsel, and for

his Complaint states as follows:

## PARTIES

       1.     Plaintiff, Richard Sincere, is a resident of the Commonwealth of Virginia

and is the lawful titleholder of 102 Laurel Circle, Charlottesville, Virginia 22903

("Property").

2.      Defendant BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP ("BAC Servicing") is a limited partnership with its principal place of business in Simi Valley, California. BAC Servicing regularly transacts business in the Commonwealth of Virginia. BAC Servicing is a subsidiary of Bank of America, N.A., which has its principal place of business in Charlotte, North Carolina.

3.      Defendant Recontrust Company, N.A. ("ReconTrust") is national association with its principal place of business in Richardson, Texas. ReconTrust regularly transacts business in the Commonwealth of Virginia.

4.      Defendant ALG Trustee, L.L.C. ("ALG") is a limited liability company organized and existing under the laws of Virginia, with its principal place of business in Leesburg, Virginia.

5.      Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation registered as two entities, with its principal place of business located in Reston, Virginia. MERS is licensed to and regularly does transact business in the Commonwealth of Virginia, including the electronic registration and electronic tracking of mortgage transfers. MERS acts as an electronic clearinghouse and conduit, facilitator and non-government mortgage document tracking entity, specifically including the loan subject to this Complaint

## JURISDICTION AND VENUE

6.      The Court has the authority to exercise personal jurisdiction over Defendants in the action because they transacted business, including the transactions at issue in the present matter, within the Commonwealth of Virginia.

- 3 -

7.     Venue is appropriate in the Court pursuant to Virginia Code, 8.01-261(3)(b)
and 8.01-261(3)(i) because the suit concerns real property located in Charlottesville,
Virginia.

<div align="center">

**FACTS**

</div>

8.     On or about May 12, 2007 Plaintiff entered into a financial transaction for
the Property.

9.     On or about May 12, 2007 to effectuate the transaction, Plaintiff executed a
promissory note and deed of trust as security interest on the Property.

10.     At closing, Plaintiff signed a Deed of Trust, which named Wilmington
Finance, Inc. ("Wilmington Finance") as Lender, Mortgage Electronic Registration
Systems, Inc. ("MERS") as Beneficiary, and Millennium Title & Abstract Company, Inc.
as Trustee. **Exhibit A.**

11.     Plaintiff also signed a note ("Note") in the amount of one hundred ninety-
eight thousand seventy-five hundred dollars ($198,750), which named Wilmington
Finance as the lender. **Exhibit B.**

12.     Plaintiff is the owner and sole titleholder of the Property, as evidenced by
the aforementioned Deed of Trust, subject to a lien held by Wilmington Finance.

13.     Under VA Code § 8.1A-302, the effect of provisions of the Uniform
Commercial Code may be varied by agreement.

14.     The Note defines Wilmington Finance as "Lender" and the "Note Holder"
as "anyone who takes the Note by transfer and who is entitled to receive payments under
the Note." **Exhibit B.**

15.    The Deed of trust states MERS holds legal title.  It is axiomatic that the trustee holds legal title for the benefit of the beneficiary. **Exhibit A.**

16.    To create the appearance of the ability to conduct a foreclosure sale, on or about March 17, 2011 MERS executed a "Substitution of Trustee(s)."  MERS, purporting itself to be the "beneficiary" under the Deed of Trust,  having the "authority" to remove and appoint substitute trustees, appointed Substitute Trustees ReconTrust and ALG. **Exhibit C.**

17.    MERS, acting as "Beneficiary" in the Substitution of Trustee, is not in fact a beneficiary.  It never had the rights to receive payments from Plaintiff.

18.    MERS has no authority to substitute trustees of its own volition.  The Deed of Trust states that MERS is "a separate corporation that is acting solely as a nominee for Lender." **Exhibit A.**  Thus, MERS was acting out of the scope of its authority in attempting to substitute trustees, especially considering that MERS does not state in the Substitution that it is acting behalf of any lender or other entity. *See In Re Joshua & Stephanie Mitchell*, Bankruptcy Court, District Of Nevada, Case No. BK-S-07-16226-LBR, Chapter 7 (March 31, 2009) (MERS's standing and authority in any capacity in the mortgage securitization process, in particular its right to represent putative "lenders" in the foreclosure process does not exist).

19.    MERS cannot act as the Nominee for the Lender, because MERS may only exercise the powers of a Lender under the Deed of Trust when "necessary to comply with law or custom." **Exhibit A.**  MERS's Substitution of Trustees was not necessary to

comply with law or custom. Thus, MERS had no authority to Substitute Trustees ReconTrust and ALG.

20.     The original Deed of Trust lists Wilmington Finance as the lender and the secured party. Wilmington Finance never transferred the Note or the independent and severable right to receive payment needed to make MERS a secured party, enabling MERS to substitute trustees.

21.     The Deed of Trust conspicuously provides: "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder." The Lender is clearly defined, in the Deed of Trust, page one (1), as Wilmington Finance. Thus Wilmington Finance, or its assignee(s), is the only entity that can appoint substitute trustees. **Exhibit A.**

22.     On or about March 4, 2011 Plaintiff received a verification of debt from ReconTrust and ALG. This document claims BAC Servicing is the "creditor to whom the debt is owed." **Exhibit D**.

23.     BAC Servicing has paid no value for the Note to establish the rights of a holder, due to the terms of the Note itself, which require that the Note be transferred with the right to receive payment under the Note. Thus BAC Servicing is not a "holder in due course," nor is it the noteholder. BAC Servicing is not an assignee of the Lender either.

24.     Further, on or about April 8, 2011 the MERS servicer website reflected that The Bank of New York Mellon, N.A. was the investor and BAC Servicing was the servicer. Upon information and belief, the investor represents the secured party and noteholder. **Exhibit E.**

25.    Despite the fact that BAC Servicing is not the secured party, Defendants ReconTrust and ALG nonetheless proceeded to schedule a foreclosure sale of Plaintiff's property on April 12, 2011, and failed to perform any due diligence to ensure that the entity invoking the power of sale under the Deed of Trust and VA Code 55-59 actually has the authority to do so.

26.    Defendants ReconTrust and ALG have failed to maintain their impartiality[1] or conduct reasonable due diligence to perform their own functions, in an effort to push through an unlawful foreclosure and gain the trustees' commission that would result from said unlawful foreclosure sale.

27.    Recontrust is a wholly-owned subsidiary of BAC Servicing.

28.    Recontrust and ALG prepared the document appointing themselves Substitute Trustees. **Exhibit C**.

29.    The Deed of Trust is a security instrument, a contractual agreement between the parties (See VA Code Ann. §55-59 – the Deed of Trust is in the nature of a contract).

## COUNT I
### DECLARATORY JUDGMENT - Virginia Code Ann. §8.01-184
(Versus ReconTrust, ALG, and BAC Servicing)

30.    Plaintiff re-alleges and incorporates by reference all paragraphs above, as though fully set forth in the count.

---

[1] The trustee is a fiduciary for both debtor and creditor and must act impartially between them. Rohrer v. Strickland, 116 Va. 755, 759, 82 S.E. 711, 712 (1914).

31.     Defendant BAC Servicing has no legal or equitable right or interest in the Note and/or Deed of Trust – they are not the beneficiary, not the secured party, and not entitled to greater than 50% of the obligations due under the Note.

32.     BAC Servicing is not the holder of the Note securing the Property and is not entitled to enforce the Note.  BAC Servicing has no right to foreclose on the property. Section 55-59 of the Code of Virginia, as Amended, only allows the secured party or beneficiary to proceed to a non-judicial sale.  As Defendant BAC Servicing is not a secured party, nor is it a beneficiary, BAC Servicing has no authority to foreclose on Plaintiff's home.

33.     BAC Servicing  has no authority under the Deed of Trust to enforce the terms thereof, is not the "true party in interest" (the person to whom the obligation is owed), as required by *Harmon v. Sadjadi,* 639 S.E. 2d 294, 299 (Va. 2007), and cannot prove the existence of an injury to attempt to either: i) collect on the debt; ii) to declare a default; or iii) invoke of the power of sale on the indebtedness which is the subject of the Complaint.

34.     Defendants have no privity of contract with Plaintiff to establish a claim of outstanding debt obligations, which would allow them to effectuate a valid and legal foreclosure on Plaintiff's Property.

WHEREFORE, Plaintiff respectfully requests that the Honorable Court: (1) order Defendant BAC Servicing to pay all costs associated with and incurred during the prosecution of the action; (2) declare that the Defendant BAC Servicing does not have any right, title, or interest in the subject Note or Deed of Trust securing the Note against

the Property; (3) order that any reporting by BAC Servicing of negative information to any credit reporting agency be ordered removed by BAC Servicing; and (4) order other further relief as the Court deems necessary and just. Plaintiff also demands injunctive relief or a temporary restraining order stating: any unlawful detainer proceedings are stayed until the Court is satisfied that the proper party declared a default, removed/appointed substitute trustees, accelerated the Note, and invoked the power of sale.

## COUNT II
BREACH OF FIDUCIARY DUTY
(Versus ReconTrust and ALG)

35.    Plaintiff realleges and incorporates by reference the above paragraphs, as though fully set forth in the cause of action.

36.    Defendant ReconTrust and ALG owed the duty of impartiality and the ordinary care of a fiduciary to the Plaintiff, but engaged in collection efforts against Plaintiff for an alleged default under the Note.

37.    By scheduling a foreclosure sale on April 4, 2011 ReconTrust and ALG breached their fiduciary duty to Plaintiff.

38.    Despite the fact that BAC Servicing is not the secured party, ReconTrust and ALG have nonetheless proceeded with foreclosure and failed to perform any due diligence to ensure that the entity invoking the power of sale under the Deed of Trust and VA Code 55-59 actually has the authority to do so.

39.    As a result of ReconTrust and ALG's breach, Plaintiff has suffered financial loss and distress in the fear of losing him home.

40.    The removal and appointment of substitute trustees must strictly comply with the trust document – the Deed of Trust.  Actions that fail to strictly comply with the trust document are void.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award damages against Defendant ReconTrust and ALG in the amount of $250,000 to compensate them for their financial losses resulting from said breach.

## COUNT III
### QUIET TITLE/ REMOVE CLOUD ON TITLE
(To strike/remove documents from the land records)
(versus all Defendants )

41.     Plaintiff re-alleges and incorporates by reference all paragraphs above, as though fully set forth in the count.

42.     The removal and appointment of substitute trustees must strictly comply with the trust document – the Deed of Trust. Actions that fail to strictly comply with the trust document are void.

43.     The appointment of the substitute trustees does not strictly comply with the Deed of Trust because a party with no right to appoint substitute trustees, MERS, attempted to appoint substitute trustees.

44.     Because the Substitution of Trustee does not comply with the Deed of Trust, the Substitution of Trustees is void.

45.     Defendants have created a cloud on Plaintiff's title, and in fact have attempted to take it from him, when they had no right to do so.

46.     Plaintiff therefore seeks an order declaring the Substitution of Trustee as void and directing the Clerk of the Court to remove said documents from the land records.

WHEREFORE, Plaintiff respectfully requests that the Honorable Court enter an Order directing the clerk, land records division, to remove and/or strike the identified Substitution of Trustee from the land records. Plaintiff also demands injunctive relief or a temporary restraining order stating: any unlawful detainer proceedings are stayed until

the Court is satisfied that the proper party declared a default, removed/appointed

substitute trustees, accelerated the Note, and invoked the power of sale.


Plaintiff respectfully demands a Jury Trial on all issues raised by the Complaint.


Respectfully submitted,

RICHARD SINCERE

By Counsel,


Shikha Parikh, VSB# 80021
Jeffrey Brundage, VSB# 80179
COMPLIANCE COUNSEL, PC
11320 Random Hills Road, Suite 540
Fairfax, VA 22030
P. 703.261.7097
F. 703.891.9547
jbrundage@compliance-counsel.com
*Counsel for Plaintiff*

BOOK 1144 PAGE 405

003035



009905857   SINCERE   RE   41

610   171282041   D2   001   001

RETURN TO:

Millennium Title and Abstract Company, Inc.
2905 Mitchellville Road, Suite 209
Bowie, MD 20716

On or about 6/19/08

07-2094

---

[Space Above This Line For Recording Data]

SINCERE
Loan #: 3000057358
PIN #: 240-035000
MIN: 100372407054502211

# DEED OF TRUST

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by **RICHARD E SINCERE, JR.,** as Borrower (trustor), to **MILLENNIUM TITLE & ABSTRACT COMPANY, INC,** as Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc., as beneficiary.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **MAY 12, 2007,** together with all Riders to this document.
(B) **"Borrower"** is **RICHARD E SINCERE, JR..** Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is **WILMINGTON FINANCE INC..** "Lender" is a **CORPORATION** organized and existing under the laws of **DELAWARE.** Lender's address is **401 PLYMOUTH ROAD, SUITE 400, PLYMOUTH MEETING, PA 19462.**
(D) **"Trustee"** is **MILLENNIUM TITLE & ABSTRACT COMPANY, INC.** Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia- chartered corporation whose principle office is located in Virginia. Trustee's address is ~~2905 MITCHELLVILLE RD., STE 209, BOWIE, MD 20716.~~ 8150 Leesburg Pike, 10th floor, Vienna, VA 22182.
(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) **"Note"** means the promissory note signed by Borrower and dated **MAY 12, 2007.** The Note states that Borrower owes Lender **ONE HUNDRED NINETY-EIGHT THOUSAND SEVEN HUNDRED FIFTY AND 00/100 Dollars (U.S. $198,750.00)** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JUNE 1, 2037.**
(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**VIRGINIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
ᘓ  354.26  Page 1 of 13  Form 3047 1/01



EXHIBIT
A

BOOK 1144 PAGE 406

3000057358

(H) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider
☐ Balloon Rider     ☐ Planned Unit Development Rider     ☐ Biweekly Payment Rider
☐ 1-4 Family Rider     ☐ Other(s) [specify]

(J) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "**Escrow Items**" means those items that are described in Section 3.

(N) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY (Type of Recording Jurisdiction) of CHARLOTTESVILLE (Name of Recording Jurisdiction)

VIRGINIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
354.26      Page 2 of 13      Form 3047 1/01

BOOK 1144 PAGE 407

3000057358

SEE APPENDIX A
which currently has the address of 102 LAUREL CIRCLE, CHARLOTTESVILLE, Virginia 22903
("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all
easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and
additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security
Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the
interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom,
MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of
those interest, including, but not limited to, the right to foreclose and sell the Property; and to take any action
required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has
the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real
property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any
prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items
pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.
currency. However, if any check or other instrument received by Lender as payment under the Note or this
Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments
due under the Note and this Security Instrument be made in one or more of the following forms, as selected
by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check,
provided any such check is drawn upon an institution whose deposits are insured by a federal agency,
instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at
such other location as may be designated by Lender in accordance with the notice provisions in Section 15.
Lender may return any payment or partial payment if the payment or partial payments are insufficient to
bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan
current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial
payments in the future, but Lender is not obligated to apply such payments at the time such payments are
accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest
on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan
current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds
or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal
balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now
or in the future against Lender shall relieve Borrower from making payments due under the Note and this
Security Instrument or performing the covenants and agreements secured by this Security Instrument.
2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all
payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due
under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be
applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be

VIRGINIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
354.26                                    Page 3 of 13                              Form 3047 1/01

BOOK 1144 PAGE 408

3000057358

applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as

VIRGINIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
354.26                              Page 4 of 13                              Form 3047 1/01

·BOOK 1144 PAGE  409

3000057358

defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for

VIRGINIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
354.26                    Page 5 of 13                    Form 3047 1/01

damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as

BOOK 1144 PAGE 411

3000057358

Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

VIRGINIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
~~~ 354.26                                    Page 7 of 13                                    Form 3047 1/01

BOOK 1144 PAGE 412

3000057358

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

VIRGINIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
354.26                          Page 8 of 13                          Form 3047 1/01

BOOK 1144 PAGE 413

3000057358

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the

BOOK **1 1 4 4** PAGE  **4 1 4**

3000057358

charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this

VIRGINIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
354.26                                    Page 10 of 13                                    Form 3047 1/01

BOOK 1144 PAGE 415

3000057358

Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous

VIRGINIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
354.26                          Page 11 of 13                          Form 3047 1/01

BOOK 1144 PAGE 416

3000057358

Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this

VIRGINIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
354.26                                      Page 12 of 13                                   Form 3047 1/01

BOOK 1144 PAGE 417

3000057358

Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____  MAY 12, 2007
- BORROWER - RICHARD E SINCERE JR. - DATE -

[Space Below this Line For Acknowledgment]

STATE OF Virginia

COUNTY OF City of Charlottesville

The foregoing instrument was acknowledged before me on this May 12, 2007
Richard E. Sincere Jr.

_____
Signature: Notary Public

My Commission Expires: 7/31/2010

# ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

SINCERE
Loan #: 3000057358
MIN: 100372407054502211

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

MAY 12, 2007                    BOWIE                      MARYLAND
   [Date]                       [City]                      [State]

102 LAUREL CIRCLE, CHARLOTTESVILLE, VA 22903
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $198,750.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WILMINGTON FINANCE INC.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.750%. The interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on JULY 1, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO BOX 209, PLYMOUTH MEETING, PA 19462 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $1,707.57. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of JUNE, 2009, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR INDEX -Single Family- Freddie Mac UNIFORM INSTRUMENT
Amended for Virginia
9886.16                                Page 1 of 4                              Form 3590 1/01
Modified by WILMINGTON FINANCE INC.



ALL-STATE LEGAL
EXHIBIT
B

3000057358

month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND THREE-FOURTHS percentage points (6.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.750% or less than 9.750%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point (1.000%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 15.750%, or less than 9.750%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY SEE 'PREPAYMENT RIDER TO NOTE' ATTACHED HERETO AND MADE A PART HEREOF.**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase:

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

MULTISTATE ADJUSTABLE RATE NOTE – LIBOR INDEX –Single Family– Freddie Mac UNIFORM INSTRUMENT
Amended for Virginia
⟳  9886.16
Modified by WILMINGTON FINANCE INC.

Page 2 of 4

Form 3590 1/01

3000057358

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    (C) Notice of Default

    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    (D) No Waiver By Note Holder

    Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    (E) Payment of Note Holder's Costs and Expenses

    If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

    Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

    Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR INDEX -Single Family- Freddie Mac UNIFORM INSTRUMENT
Amended for Virginia

9886.16                      Page 3 of 4                          Form 3590 1/01

Modified by WILMINGTON FINANCE INC.

3000057358

impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____      MAY 12, 2007
- BORROWER -   RICHARD E SINCERE JR. -  DATE -

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR INDEX -Single Family- Freddie Mac UNIFORM INSTRUMENT
Amended for Virginia
   9886.16                          Page 4 of 4                          Form 3590 1/01
Modified by WILMINGTON FINANCE INC.

TS No. 11 -0011309
Trustee No. 516060

## SUBSTITUTION OF TRUSTEE(S)

THIS SUBSTITUTION OF TRUSTEES, made between **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, herein called the Beneficiary, and **RICHARD E. SINCERE, JR.**, herein called the Original Borrower(s), being together the Grantors herein; and **RECONTRUST COMPANY, N.A.**, 2380 Performance Drive, TX2-985-07-03, Richardson, TX 75082 and **ALG Trustee, LLC,** 803 Sycolin Road, Suite 301, Leesburg, VA 20175, Substitute Trustee(s), as Grantee, provides as follows:

WHEREAS, by Deed of Trust dated **May 12, 2007** and recorded in the Clerk's Office of the Circuit Court of the City of **CHARLOTTESVILLE**, Virginia, , in Deed Book 1144, at page 405, the Original Borrowers conveyed to **MILLENNIUM TITLE & ABSTRACT COMPANY, INC.**, Trustee(s), herein called Original Trustee(s), to be indexed as Grantors, certain real property described in said Deed of Trust, to secure an indebtedness in the principal sum of **$198,750.00**, and also described in said Deed of Trust; and

WHEREAS, the aforesaid Deed of Trust allows the undersigned to remove the trustee(s) and appoint successor trustee(s);

NOW, THEREFORE, by virtue of the authority contained in the aforementioned Deed of Trust, the undersigned does hereby remove the Original Trustee(s) as Trustee(s), and does also hereby remove any Substitute Trustee(s) or trustee(s) who may have been previously appointed in place of the Original Trustee(s), and does hereby appoint RECONTRUST COMPANY, N.A. AND ALG TRUSTEE, LLC of the city of Leesburg, VA. as Substitute Trustee(s), either of whom may act and said Substitute Trustee(s) shall in accordance with the provisions of said Deed of Trust, succeed to all the title, powers and duties conferred upon the Original Trustee(s) by the terms of said Deed of Trust and by applicable law.



IN WITNESS WHEREOF, the Beneficiary has caused this Substitution of Trustee(s) to be signed by its duly authorized officer on this ___17th___ day of ___March___, 2011.

By:   MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC

3-17-11

Stephen Gross          Assistant Secretary

STATE OF ___Texas___
COUNTY OF ___Dallas___

On ___MAR 1 7 2011___, before me ___Stephen Gross Alysia Anderson___, personally appeared ___Stephen Gross Assistant Secretary___, known to me (or proved to me on the oath of _____ or through _____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
WITNESS MY HAND AND OFFICIAL SEAL

_____
Notary Public's Signature

ALYSIA ANDERSON
MY COMMISSION EXPIRES
June 17, 2014



011111309
TS No. 11-0011309
Property Address:
102 LAUREL CIRCLE
CHARLOTTESVILLE, VA 22903
March 4, 2011

## Important Legal Notice

**RECONTRUST COMPANY, N.A. and ALG Trustee, LLC,** acting in its capacity as agent for the beneficiary, is required by law to advise you of the following:

**RECONTRUST COMPANY, N.A. and ALG Trustee, LLC is attempting to collect a debt and any information it obtains will be used for that purpose.**

<u>**The name of the Creditor to whom the debt is owed:**</u>  BAC Home Loans Servicing, L.P.
<u>**Debt Validation Notice:**</u>

If you believe that you may be entitled to the benefit of the Servicemembers' Civil Relief Act of 2003, it is recommended that you consult with your attorney.

(a.) As of the date of this letter, you owe $232,787.45. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call (800) 281-8219.

(b.) Unless you, within (30) days after the receipt of this letter, dispute the validity of the debt or any portion of the debt, RECONTRUST COMPANY, N.A. and ALG Trustee, LLC will assume the amount to be valid.

(c.) If you notify RECONTRUST COMPANY, N.A. and ALG Trustee, LLC in writing, to the address provided below within the thirty (30) day period, that you dispute the debt, or any portion of the debt, RECONTRUST COMPANY, N.A. and ALG Trustee, LLC will obtain verification of the debt and mail it to you. If you so request in writing to the address provided below within the thirty (30) day period, RECONTRUST COMPANY, N.A. and ALG Trustee, LLC will provide you with the name and address of the original creditor if it is different from the current creditor.

<div align="center">

**RECONTRUST COMPANY, N.A. and ALG Trustee, LLC**
803 Sycolin Road, Suite 301
Leesburg, VA 20175

</div>

IMPORTANT BANKRUPTCY NOTICE:  IF YOU PREVIOUSLY HAVE RECEIVED A DISCHARGE OF THE HOME LOAN DEBT, THIS IS NOT AN ATTEMPT TO COLLECT THE DEBT FROM YOU PERSONALLY, BUT IS AN ACT TO ENFORCE THE CREDITOR'S VALID LIEN RIGHTS AGAINST THE PROPERTY WHICH SECURES THE DEBT.

Sincerely,

**RECONTRUST COMPANY, N.A. and ALG Trustee, LLC**





**Process Loans, Not Paperwork™**

www.mers-servicerid.org

## 1 record matched your search:

MIN: 1003724-0705450221-1    Note Date: 05/12/2007          MIN Status: Active

Servicer:  BAC Home Loans Servicing, LP          Phone: (800) 669-6607
           Simi Valley, CA

Investor:  The Bank of New York Mellon, N.A.      Phone: (888) 999-0615
           CYPRESS, CA

Return to Search

For more information about MERS please go to www.mersinc.org

Copyright© 2006 by MERSCORP, Inc.



EXHIBIT
E

**COMMONWEALTH OF VIRGINIA**



OFFICIAL RECEIPT
CHARLOTTESVILLE CIRCUIT COURT
CIVIL

DATE: 04/11/11 TIME: 11:49:19 ACCOUNT: 540CL20110126-00   RECEIPT: 11000003825
CASHIER: GTE   REG: VP12   FILING: COM   TYPE: FULL PAYMENT
STYLE OF CASE: SINCERE, RICHARD VS. BAC HOME LOANS SERVICING, LP
   SUIT AMOUNT:   $198,750.00
ACCT OF: SINCERE, RICHARD              RECD: COMPLIANCE COUNSELOR
   CHECK:      $292.00
DESCRIPTION 1: PLAINTIFF: SINCERE, RICHARD
            2: NO HEARING SCHEDULED
CODE DESCRIPTION              PAID  CODE DESCRIPTION              PAID
047  WRIT TAX - CIVIL        25.00  106  TECHNOLOGY TRST FND       5.00
122  LEGAL AID FEE            9.00  147  INDIGENT ASSISTANCE       1.00
170  COURT TECH FUND         10.00  228  CHMF                      2.00
304  CLERK CIVIL FEE        240.00

                                    TENDERED   :      292.00
                                    AMOUNT PAID:      292.00
                                    CHANGE AMT :         .00

CLERK OF COURT: PAUL C. GARRETT

April 11, 2011

No service requested.

$198,750.00

**COMMONWEALTH OF VIRGINIA**

CHARLOTTESVILLE CIRCUIT COURT
MISCELLANEOUS

DATE: 05/02/11 TIME: 13:25:15 ACCOUNT: 590CRM11050008 RECEIPT: 11000004535
CASHIER: BSC TYPE: FULL PAYMENT
PAYOR OF CASE: SAV-V2-012 FILING: CSM
PAYOR: CPL. COMPLIANCE COMPLIANCE
CPL. COMPLIANCE COMPLIANCE SECD: COMPLIANCE COMPLIANCE
CPL: $36.00
CHECK: $36.00
DESCRIPTION 1: SUMMONS
DESCRIPTION 2: RICHARD SINDERS V. BACK HOME LOANS SERVICING
CODE DESCRIPTION     PAID  CODE DESCRIPTION      PAID
306 SHERIFF FEES     36.00  315 MISC. FEES & COMM.      .00
236 DOCUMENT REPRODUCTI    .00
                              TENDERED:      36.00
                              AMOUNT PAID:   36.00
                              CHANGE AMT :     .00

CLERK OF COURT: PAUL C. GARRETT

DC-18 (190)



**COMPLIANCE COUNSEL**
MORTGAGE BANKING ATTORNEYS

WWW.COMPLIANCE-COUNSEL.COM

DENA M. ROUDYBUSH △
ANDREW F. CAMPBELL ◊
SHIKHA PARIKH ◊ △
JEFFREY P. BRUNDAGE △
TODD LEWIS, OF COUNSEL ◊ △ ‡

△ Virginia
◊ Maryland
‡ District of Columbia

April 16, 2011

Clerk
Circuit Courts for the City of Charlottesville
315 E High St
Charlottesville, VA 22902-5195

**RE:  Richard Sincere, v. BAC Home Loans Servicing**
**Case No. CL2011-126**

Dear Clerk

Enclosed please find Complaint for Service in Process to the following
Defendants:

**ALG Trustee, L.L.C.**
**c/o CT Corporation System**
**4701 Cox Road, Suite 301**
**Glen Allen, VA 23060**

**Mortgage Electronic Registration Systems, Inc.**
**c/o Registered Agent for MERS1 and MERS2**
**Sharon Horstkamp, Esq.**
**1818 Library Street, Suite 300**
**Reston, VA 20190**

**Mortgage Electronic Registration Systems, Inc.**
**c/o Registered Agent for MERS1 and MERS2**
**Sharon Horstkamp, Esq.**
**1818 Library Street, Suite 300**
**Reston, VA 20190**

Enclosed please find a check in the amount of $36.00.  Please contact the
undersigned if you should have any questions in this regard.

Sincerely,

Marina De Leon
Paralegal

# COMMONWEALTH OF VIRGINIA



CHARLOTTESVILLE CIRCUIT COURT
Civil Division
315 EAST HIGH STREET
CHARLOTTESVILLE  VA  22902
(434) 970-3766

Summons

To: MORTGAGE ELECTRONIC REG SYSTEM
C/O R/A FOR MERS1 AND MERS2
SHARON HORSTKAMP, ESQ.
1818 LIBRARY STREET, SUITE 300
RESTON VA 20190

Case No. 540CL20110126-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, ~~the allegations and charges may be taken as admitted~~ and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, May 02, 2011

Clerk of Court:  PAUL C. GARRETT

by _____
(CLERK/DEPUTY CLERK)

Instructions:

Hearing Official:

Attorney's name:    PARIKH, SHIKHA
11320 RANDOM HILLS ROAD
SUITE 540
FAIRFAX VA 22030

# COMMONWEALTH OF VIRGINIA



CHARLOTTESVILLE CIRCUIT COURT
Civil Division
315 EAST HIGH STREET
CHARLOTTESVILLE  VA  22902
(434) 970-3766

Summons

To: MORTGAGE ELECTRONIC REG. SYS
C/O R/A FOR MERS1 AND MERS2
SHARON HORSTKAMP, ESQ.
1818 LIBRARY STREET, SUITE 300
RESTON VA 20190

Case No. 540CL20110126-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, ~~the allegations and charges may be taken as admitted~~ and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, May 02, 2011

Clerk of Court: PAUL C. GARRETT

by _____
(CLERK/DEPUTY CLERK)

Instructions:


Hearing Official:


Attorney's name:     PARIKH, SHIKHA
11320 RANDOM HILLS ROAD
SUITE 540
FAIRFAX VA 22030

# COMMONWEALTH OF VIRGINIA



CHARLOTTESVILLE CIRCUIT COURT
Civil Division
315 EAST HIGH STREET
CHARLOTTESVILLE  VA  22902
(434) 970-3766

Summons

To: AIG TRUSTEE, L.L.C.
C/O CT CORPORATION SYSTEM
4701 COX ROAD, SUITE 301
GLEN ALLEN VA 23060

Case No. 540CL20110126-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, ~~the allegations and charges may be taken as admitted~~ and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, May 02, 2011

Clerk of Court: PAUL C. GARRETT

by _____
                    CLERK/DEPUTY CLERK

Instructions:



Hearing Official:



Attorney's name:     PARIKH, SHIKHA
11320 RANDOM HILLS ROAD
SUITE 540
FAIRFAX VA 22030

034375

# COMMONWEALTH OF VIRGINIA



CHARLOTTESVILLE CIRCUIT COURT
Civil Division
315 EAST HIGH STREET
CHARLOTTESVILLE  VA  22902
(434) 970-3766

Summons

To: MORTGAGE ELECTRONIC REG SYSTEM          Case No. 540CL20110126-00
C/O R/A FOR MERS1 AND MERS2
SHARON HORSTKAMP, ESQ.
1818 LIBRARY STREET, SUITE 300
RESTON VA 20190

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, ~~the allegations and charges may be taken as admitted~~ and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, May 02, 2011

Clerk of Court: PAUL C. GARRETT

by _____
(CLERK/DEPUTY CLERK)

Instructions:

RECEIVED
2011 MAY -4  PH 1:42
OFFICE OF THE SHERIFF
FAIRFAX COUNTY, VA

Hearing Official:

Attorney's name:    PARIKH, SHIKHA
11320 RANDOM HILLS ROAD
SUITE 540
FAIRFAX VA 22030

Rec
5/12/11



February 18, 2010

To Whom It May Concern:

I, Sharon McGann Horstkamp, am the Registered Agent for MERSCORP, Inc, and Mortgage Electronic Registration Systems, Inc. (collectively, "MERS"). As the Registered Agent, I am authorizing Richard Anderson, Camelia Martin, Brandie Peeples, Joseph Patry, Andrew Marmion, Alexandra Stefanovic, and John Murphy to accept service of process on behalf of MERS.

Signed:

*on 05/05/2011 @ 12:30 P.m.*

Sharon McGann Horstkamp
MERS Vice President and General Counsel

COMMONWEALTH OF VIRGINIA

COUNTY OF FAIRFAX

The foregoing Letter was acknowledged before me this 18 day of Febraury 2010, by Sharon McGann Horstkamp, the Registered Agent of MERS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to within this instrument and acknowledged to me that she executed the same.

WITNESS my hand and official seal.

Elizabeth Powell

NOTARY PUBLIC
My Commission Expires: 5/31/2012

# COMMONWEALTH OF VIRGINIA



CHARLOTTESVILLE CIRCUIT COURT

Civil Division

315 EAST HIGH STREET

CHARLOTTESVILLE  VA  22902

(434) 970-3766

Summons

To: MORTGAGE ELECTRONIC REG. SYS          Case No. 540CL20110126-00
C/O R/A FOR MERS1 AND MERS2
SHARON HORSTKAMP, ESQ.
1818 LIBRARY STREET, SUITE 300
RESTON VA 20190

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, ~~the allegations and charges may be taken as admitted~~ and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, May 02, 2011

Clerk of Court: PAUL C. GARRETT

by _____
(CLERK/DEPUTY CLERK)

Instructions:

Hearing Official:

RECEIVED
2011 MAY -4  PM 1:42
OFFICE OF THE SHERIFF
FAIRFAX COUNTY, VA

Attorney's name:    PARIKH, SHIKHA
11320 RANDOM HILLS ROAD
SUITE 540
FAIRFAX VA 22030

Rec
5/12/11



February 18, 2010

To Whom It May Concern:

I, Sharon McGann Horstkamp, am the Registered Agent for MERSCORP, Inc, and
Mortgage Electronic Registration Systems, Inc. (collectively, "MERS"). As the
Registered Agent, I am authorizing Richard Anderson, Camelia Martin, Brandie Peeples,
Joseph Patry, Andrew Marmion, Alexandra Stefanovic, and John Murphy to accept
service of process on behalf of MERS.

↳ on 05/05/2011 @ 12:30 P.M.

Signed:

Sharon McGann Horstkamp
MERS Vice President and General Counsel

COMMONWEALTH OF VIRGINIA

COUNTY OF FAIRFAX

The foregoing Letter was acknowledged before me this 18 day of Febraury 2010, by
Sharon McGann Horstkamp, the Registered Agent of MERS, personally known to me (or
proved to me on the basis of satisfactory evidence) to be the person whose name is
subscribed to within this instrument and acknowledged to me that she executed the same.

    WITNESS my hand and official seal.

NOTARY PUBLIC
My Commission Expires: 5/31/2012

# COMMONWEALTH OF VIRGINIA



CHARLOTTESVILLE CIRCUIT COURT
Civil Division
315 EAST HIGH STREET
CHARLOTTESVILLE VA 22902
(434) 970-3766

Proof of Service

Virginia:
    In the CHARLOTTESVILLE CIRCUIT COURT

Case number: 540CL20110126-00
Service number: 001
Service filed: April 11, 2011
Judge:

Served by: Henrico COUNTY
Style of case: SINCERE, RICHARD vs BAC HOME LOANS SERVICING, LP
Service on: AIG TRUSTEE, L.L.C.                    Attorney: PARIKH, SHIKHA
    C/O CT CORPORATION SYSTEM                         11320 RANDOM HILLS ROAD
    4701 COX ROAD, SUITE 301                           SUITE 540
    GLEN ALLEN VA 23060                                FAIRFAX VA 22030

Instructions:

Returns shall be made hereon, showing service of Summons issued Monday, May 02, 2011 with a copy of the
Complaint filed Monday, April 11, 2011 attached.

Hearing date  :
Service issued: Monday, May 02, 2011

For Sheriff Use Only

Rec
5.13.11

Service Authorization

CT Corporation System is registered agent for various corporations, limited liability companies and partnerships. The following persons are designated in the office of the corporation upon whom any process, notice or demand may be served as representatives of the Corporation.

Tinika C. Baylor

Katie E. Bush

Adam Carr

Jenn Greene

Dacia Jamison

This authorization pertains to the authority of individuals to receive process on behalf of CT Corporation System and Business Filings Incorporated. It does not certify the receipt or acceptance of any specific process.

Tinika C. Baylor
Corporate Operations Manager
CT Corporation System
A Wolters Kluwer Company

State of Virginia
County of Henrico

This day personally appeared before me, Tinika C. Baylor, whose name is signed above and who, being first duly sworn, upon her oath, states that the foregoing Affidavit is true to the best of her knowledge and belief.

Subscribed and sworn before me this 10th day of March, 2010

Notary Public

VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF CHARLOTTESVILLE

| | | |
|---|---|---|
| Richard Sincere, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CL 2011-126 |
| | ) | |
| BAC Home Loans Servicing, LP, | ) | |
| fka Countrywide Home Loans | ) | |
| Servicing LP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DEMURRER

COMES NOW Defendant ALG Trustee, LLC (herein "ALG Trustee"), by

counsel, and, for its Demurrer to Plaintiff's Complaint, states as follows:

### Background

As of the date of the filing of the Complaint in this matter, the Plaintiff was the

title owner of the property commonly known as 102 Laurel Circle, Charlottesville,

Virginia. Complaint, ¶ 1. On or about May 12, 2007, Wilmington Finance, Inc., loaned

$198,750.00 to the Plaintiff. Complaint, ¶¶ 9-11. The Plaintiff signed a promissory note

in the favor of Wilmington Finance, Inc., in the principal amount of $198,750.00.

Complaint, ¶¶ 9-11. The Plaintiff also signed a deed of trust to secure the repayment of

said debt. Complaint, ¶¶ 9-11. This deed of trust was recorded among the land records

for the Circuit Court for the City of Charlottesville. Complaint, Ex. A, at pg. 1.

On or about April 11, 2011, the Plaintiff, by counsel, commenced this lawsuit.

The Complaint named BAC Home Loans Servicing, LP, fka Countrywide Home Loans

Servicing, LP (herein "BAC"), Mortgage Electronic Registration Systems, Inc., ALG

FILED

2011 MAY 25  A 10: 03

CIRCUIT COURT CLERK'S OFFICE
CHARLOTTESVILLE, VA

DEPUTY CLERK

Trustee and Recontrust Company, N.A. (herein "Recontrust") as Defendants.  The

Complaint contains three (3) Counts:  1) Declaratory Judgment, 2) Breach of Fiduciary

Duty, and 3) Quiet Title/Remove Cloud on Title.  Complaint, pgs. 7-11.  In that respect,

the Plaintiff is seeking a declaration that BAC has no rights in the relevant note and deed

of trust, a monetary judgment in the amount of $250,000.00 against ALG Trustee and

Recontrust for alleged breaches of fiduciary duties, and the quieting of title as to a

substitution of trustee document.

### Standard of Review

"A demurrer admits the truth of the facts alleged in the pleading to which it is

addressed, as well as any facts that may be reasonably and fairly implied and inferred

from those facts." Philip Morris v. The Chesapeake Bay Foundation, 273 Va. 564, 572

(2007)(citation omitted).  "The purpose of a demurrer is to determine whether a motion

for judgment states a cause of action upon which the requested relief may be granted."

Tronfeld v. Nationwide Mutual Ins. Co., 272 Va. 709, 712-713 (2006)(citation omitted).

### Law and Argument

Section 8.01-184 of the Virginia Code provides as follows:

> In cases of actual controversy, circuit courts within the scope of their respective
> jurisdictions shall have power to make binding adjudications of right, whether or
> not consequential relief is, or at the time could be, claimed and no action or
> proceeding shall be open to objection on the ground that a judgment order or
> decree merely declaratory of right is prayed for. Controversies involving the
> interpretation of deeds, wills, and other instruments of writing, statutes, municipal
> ordinances and other governmental regulations, may be so determined, and this
> enumeration does not exclude other instances of actual antagonistic assertion and
> denial of right.

Va. Code, § 8.01-184.  "The authority to enter a declaratory judgment is discretionary

and must be exercised with great care and caution." Hoffman Family, L.L.C., v. Mill

Two Associates Partnership, et al., 259 Va. 685, 692 (2000)(citation omitted). "[T]he declaratory judgment statute does not authorize courts to render advisory opinions or decide moot or speculative issues." Blue Cross & Blue Shield of Virginia v. St. Mary's Hospital of Richmond, Inc., et al., 245 Va. 24, 35 (1993)(citation omitted). And lastly, "where claims and rights asserted have fully matured, and the alleged wrongs have already been suffered, a declaratory judgment proceeding, which is intended to permit the declaration of rights before they mature, is not an available remedy." Board of Supervisors of Prince William County, Virginia v. Hylton Enterprises, Inc., 216 Va. 582, 585 (1976) (citing Liberty Mutual Ins. Co. v. Bishop, 211 Va. 414, 421 (1970)).

In Count II of the Complaint, the Plaintiff is seeking $250,000.00 in "financial losses" from ALG Trustee and Recontrust allegedly resulting from the breach of fiduciary duties owed to the Plaintiff. In that respect, the Plaintiff alleges that ALG Trustee and Recontrust owed duties of impartiality and/or ordinary care. Complaint, ¶ 36. To substantiate his claims, the Plaintiff alleges that, "[d]espite the fact that BAC Servicing is not the secured party, ReconTrust and ALG Trustee have nonetheless proceeded with foreclosure and failed to perform any due diligence to ensure that the entity invoking the power of sale under the Deed of Trust and VA Code 55-59 actually has the authority to do so." Complaint, ¶ 38 (emphasis added). Thus, in furtherance of his case as outlined in Count II of the Complaint (which, for the purposes of this Demurrer, the undersigned takes no substantive position on at this time), it would appear that the Plaintiff will seek to prove that BAC is not a secured party or a party with rights in the applicable note and deed of trust as a basis for his claim for relief (which is, at the same time, the issue sought to be declared in Count I of the Complaint). In other words,

3

under the Plaintiff's asserted theory of the case, the Plaintiff's alleged injuries or damages have matured as a result of the allegation to be declared in Count I of the Complaint--the effect being that a declaratory judgment count should be dismissed.

WHEREFORE, Defendant ALG Trustee, LLC, by counsel, respectfully requests that this Court enter an Order which sustains the Defendant's Demurrer, which dismisses Count One (1) in the Complaint with prejudice, and grants the Defendant such further relief as it is otherwise entitled to under the law.

ALG Trustee, LLC
By Counsel

Dean L. Robinson, Esq. (VSB#34454)
Atlantic Law Group, LLC
1602 Village Market Blvd. SE, Suite 310
Leesburg, Virginia 20175
(703) 554-6413
(703) 940-9110 (fax)

<u>Certificate of Service</u>

I hereby certify that a copy of the foregoing document was mailed, postage pre-paid, on the 24$^{th}$ day of May 2011 to the following individual(s) and/or entities:

Shikha Parikh, Esq.
Jeffrey Brundage, Esq.
11320 Random Hills Road, Suite 540
Fairfax, Virginia  22030

Mortgage Electronic Registration Systems, Inc.
c/o Sharon Horstkamp, Reg. Agent
1818 Library Street, Suite 300
Reston, Virginia  20190

Recontrust Company, NA
2380 Performance Drive
Richardson, Texas  75082

BAC Home Loans Servicing, LP, fka
Countrywide Home Loans Servicing, LP
400 Countrywide Way SV-35
Simi Valley, CA  93065

Dean L. Robinson, Esq. (VSB#34454)
Atlantic Law Group, LLC
1602 Village Market Blvd. SE, Suite 310
Leesburg, Virginia  20175
(703) 554-6413
(703) 940-9110 (fax)



ATLANTIC | PO Box 2548
Leesburg, VA 20177
P 703 777 7101
F 703 940 9110
www.atlanticlawgrp.com

May 24, 2011

<u>Via Overnight Delivery</u>

Clerk
Circuit Court for the City of Charlottesville
315 East High Street
Charlottesville, Virginia 22902

   Re: Case No. CL2011-126
     <u>Richard Sincere v. BAC Home Loans Servicing, LP, et al.</u>

Dear Clerk:

   Please find enclosed ALG Trustee, LLC's Demurrer in the above-referenced matter.

   If you would, please accept this document for filing and place it the file with the other materials in the case. I have also enclosed a copy of this document. Please time-stamp the copy and return to me in the enclosed return envelope.

   Thank you for your attention and cooperation in this matter.

         Sincerely,

         Dean L. Robinson

Enclosure

cc: Service List

Rec
5/25/11